UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANDRE B. WILSON, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | ) |
| | ) Civ. No. 10-28-B-W |
| WARDEN, STATE OF MAINE PRISON, | ) |
| | ) |
| | ) |
|     Respondent | ) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

Andre B. Wilson has filed a 28 U.S.C. § 2254 petition seeking relief from his conviction in the State of Maine for gross sexual assault and unlawful sexual touching. Wilson sets forth four grounds, three of which the State characterizes as fully exhausted as federal constitutional claims for purposes the 28 U.S.C. § 2254(b)(1)(A) and one of which the State maintains was raised in the direct appeal but only as a state evidentiary rule concern. For the reasons that follow I recommend that the Court deny Wilson 28 U.S.C. § 2254 relief on all four grounds.

*Discussion*

**Parameters of 28 U.S.C. § 2254 Review**

This Court will not grant a petition for habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the Maine court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). The Maine courts' factual findings "shall be presumed to be correct" and Wilson bears the burden of disproving these factual findings by "clear and convincing

evidence." 28 U.S.C. § 2254(e)(1). See also O'Laughlin v. O'Brien, 568 F.3d 287, 298 (1st Cir.2009); McCambridge v. Hall, 303 F.3d 24, 34-35 (1st Cir. 2002).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"To provide the State with the necessary 'opportunity,'" to review his or her claims "the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citation omitted); see also Pike v. Guarino, 492 F.3d 61, 71 (1st Cir. 2007); Jackson v. Coalter, 337 F.3d 74, 85-87 (1st Cir. 2003).

**The Maine Law Court's Decision on Direct Appeal**

The Maine Law Court's decision on Wilson's direct appeal is slim pickings with respect to undertaking the § 2254(d) analysis:

> Contrary to Wilson's contentions, the court … did not err in denying his challenge for cause to a jury member, see State v. Schmidt, 2008 ME 151, ¶ 12, 957 A.2d 80, 84-85; State v. Libby, 485 A.2d 627, 629-30 (Me. 1984), nor do we discern any error or abuse of discretion in the trial court's … evidentiary rulings, see State v. Robinson, 2002 ME 136, ¶¶ 11, 15, 803 A.2d 452, 457-58; State v. Almurshidy, 1997 ME 97, ¶ 25, 732 A.2d 280, 287; State v. Maizeroi, 2000 ME 187, ¶ 22, 760 A.2d 638, 645. Finally, viewing the evidence in the light most favorable to the state, a jury could have rationally found beyond a reasonable doubt every element of both crimes charged. State v. Smen, 2006 ME 40, ¶ 7, 895 A.2d 319, 321.

State v. Wilson, Mem. Dec., Doc. No. And-08-35 (Jan. 8, 2009).[1]

With respect to the State's burden, in order for the state decision to be accorded § 2244(d) deference, the state court must have adjudicated the federal claim on the merits. See Clements v. Clarke, 592 F.3d 45, 52 (1st Cir. 2010) ( "A matter is 'adjudicated on the merits' if there is a 'decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.' Teti v. Bender, 507 F.3d 50, 56-57 (1st Cir.2007)."). Although the Maine Law Court's determination is brevis, it "was neither a disposition on procedural grounds nor a summary disposition in which the court simply remained silent on the issue[s]." Id. at 53.

But as in Clements, "even if it is uncontested that the state court's grounds were substantive, determining precisely *which* substance proves a bit more elusive." Id. "It is … not immediately apparent whether the state court was disposing of [Wilson's] federal constitutional claim[s], or whether it was only addressing the parallel claim[s] that [Wilson] had made under" Maine law. Id. If I "find that the state court had relied solely on state standards that did not implicate federal constitutional issues, [this court] would review the matter de novo." Id. (citing DiBenedetto v. Hall, 272 F.3d 1, 6-7 (1st Cir.2001)).

The First Circuit clearly rejects the application of "an inflexible rule" that "'would elevate form over substance to impose some sort of requirement that busy state judges provide case citations to federal law ... before federal courts will give deference to state court reasoning.'" Id. at 53-54 (quoting Zuluaga v. Spencer, 585 F.3d 27, 31 (1st Cir.2009)). "The real question is

---

[1] In his post-conviction proceeding Wilson raised two grounds of ineffective assistance of counsel asserting that his attorney did not present important witnesses at trial and that his attorney failed to prepare him to properly testify at trial or discuss his plea options. Wilson has not resurrected those claims here although his post-conviction attorney made a strong case in his memorandum seeking the Maine Law Court's review of the denial of post-conviction relief.

3

not whether the state court opinion cited to any federal cases, but whether the opinion addresses a fairly raised federal issue." Id. at 54. "AEDPA's trigger for deferential review is adjudication, not explanation." Id. at 55. "When a state court has truly avoided (or merely overlooked) the petitioner's federal claim, a federal court may step into the breach and review de novo. But judicial opacity is a far cry from judicial avoidance. It is the result to which we owe deference, not the opinion expounding it." Id. at 55-56. In some circumstances "reference to a state court decisions that *themselves* deal with federal constitutional issues may be sufficient to trigger AEDPA's heightened deference." Id. at 54.

**Wilson's 28 U.S.C. § 2254 Claims**

1.       Wilson's first 28 U.S.C § 2254 claim is that the trial judge committed error when he denied a for-cause challenge to a juror. This challenge is a basis for a Fourteenth Amendment challenge:

> In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process. In re Oliver, 333 U.S. 257; Tumey v. State of Ohio, 273 U.S. 510. 'A fair trial in a fair tribunal is a basic requirement of due process.' In re Murchison, 349 U.S. 133, 136.

Irvin v. Dowd, 366 U.S. 717, 722 (1961).

With respect to the specifics of his claim, Wilson notes that Juror Number 31 answered "Yes" to Question One of the jury questionnaire. That question was: "Have you or a close relative or friend been a victim of sexual abuse or sexual assault?" Wilson explains in his Section 2254 petition: "Juror 31 disclosed at side bar that her 16 year old female cousin had been sexually assaulted by her step father who was later criminally charged in the same jurisdiction and sentenced to jail. Juror 31 was selected as a juror in my case." (Sec. 2254 Pet. at 5.)

The state court record reflects that several jurors answered yes to this question. (See Jury Selection Tr. at 25-48, State App. A.) Counsel for Wilson challenged four jurors for cause three of whom had answered yes to question one. (Id. at 55.) The state superior court justice overseeing jury selection allowed two out of the three challenges based on Question One, Juror 31 being the one that he disallowed. With regards to the two allowed Question One challenges, one juror had a female friend at school who was fourteen-years-old at the time of an assault by a male and had given the juror the details. (Id. at 28-29.) The other allowed challenge was to a juror who had a daughter who at the age of thirteen was assaulted by the uncle of a friend across the street after her daughter had run away from the juror's home. (Id. at 41-42.)

It is not crystal clear from the record how the selecting justice drew this dividing line. Juror 31 -- like a slew of other jurors who answered the first question in the affirmative (including the two jurors who were successfully challenged for cause) -- professed that this knowledge/experience would not impact her impartiality. It is apparent to me that her situation was markedly different from the two jurors referenced above who were excused for cause. Juror 31 did not know the details of the unlawful contact although she was aware the step-father involved was serving jail time for the assault on her cousin who was thirteen at the time of the assault. (Id. at 33-35.) Her relationship to the cousin seemed relatively remote as she had never learned any of the details of the incident from the cousin or other family members. The presiding justice was obviously not allowing the jurors to serve based solely on their own professed impartiality because the excused jurors also professed impartiality. His discretionary call to allow this juror to serve, without more, does not suggest a violation of Wilson's right to fair trial before an impartial tribunal.

In his brief to the Maine Law Court Wilson argued per this ground:

> The presiding Justices' determination about a prospective juror's impartiality will stand unless it is clear to the Court that no competent evidence supports that decision. State v. Cooper, 485 A.2d 627, 629 (Me. 1984). See Lewisohn v. State, 433 A.2d 351 (ME 1981).
>
> The jury selection Justice conducted an individual voir dire of juror number 31 based on that juror's affirmative answer to question number 1….At side bar the juror responded to the jury selection Judge's question by revealing that a close, young, female relative had been sexually assaulted by her stepfather, who had subsequently been charged with a crime and served time in jail. Although the juror stated that she could be fair and impartial, the trial Judge should have excluded her because the instant case involved the alleged sexual assault of a young female by a male. One could reasonably infer that the juror would be biased against a defendant charge with the same kind of conduct, not withstanding her claim that she would be fair and impartial. "Asking prospective jurors to evaluate their own ability to be impartial is not always adequate, particularly if there is significant potential for juror bias." State v. Lowry, 2003 ME 38, [¶]8, 819 A.2d 331, [334]. In addition to the juror's own experience with her cousin there existed other facts that created a risk of potential bias: Mr. Wilson is black and the alleged victim is white. Assurance by a juror that a past experience would not influence or affect them is but one consideration. Id., citing Hodgdon v. Jones, 538 A.2d 281, 282 (Me. 1988); see also State v. Libby, 485 A.2d 627, 629-30 (Me. 1984) ("[A] juror's claim of indifference is but one consideration …."). The jury selection Judge committed reversible error in denying Mr. Wilson's challenge for cause to juror number 31.

(Appellant Br. at 10-11, State App. B.)

The Maine Law Court relied on State v. Schmidt, 2008 ME 151, ¶ 12, 957 A.2d 80, 84-85 and State v. Libby, 485 A.2d 627, 629-30 (Me. 1984).[2] Libby clearly relied on Irvin v. Dowd, 366 U.S. 717 (1961)[3]:

---

[2] Libby was a codefendant of Cooper's and it is the same decision cited by Wilson in his appellate brief. Wilson also cited Lewisohn which includes the following paragraph:

> Of course, "(i)t is not required ... that (a juror) be totally ignorant of the facts and issues involved (in a case)." Irvin v. Dowd, 366 U.S. 717, 722 (1961). All that can be required is that the juror be able to "lay aside his impression or opinion and render a verdict based on the evidence presented in court." Id. at 723; Spies v. Illinois, 123 U.S. 131 (1887). However, any person who prior to selection for jury service has formed a "positive and decided opinion" is incompetent to judge the guilt or innocence of the accused. Reynolds v. United States, 98 U.S. 145 (1878). The habeas justice had evidentiary support for concluding that the juror described by Mr. Rowe held such a "positive and decided opinion" and nonetheless hid that fact from judge and counsel on voir dire.

433 A.2d at 355 -56.

> Trial by jury is perhaps the most precious of safeguards afforded by Anglo-American law for the preservation of individual liberty and human dignity. Irvin v. Dowd, 366 U.S. 717, 721 (1961). The essence of our trial system is the guarantee of a fair trial by a disinterested jury, each member of which is free from bias and prejudice. International Agricultural Corp. v. Willette, 120 Me. 423, 425-26, 115 A. 170, 171 (1921); see Me. Const. art. I, § 6. To ensure this constitutional right, the Maine Legislature enacted 15 M.R.S.A. § 1259, which provides for challenges for cause of any juror whose indifference a party questions.

485 A.2d at 629.

The Maine Law Court's adjudication of this claim meets the Clements standard of fairly addressing the federal question with the Irvin underlay and is entitled to 28 U.S.C. § 2254(d)'s deferential review. Applying that standard, I conclude that Wilson's § 2254 claim pertaining to the denial of the challenge to Juror 31 does not provide a basis for federal habeas relief. If Wilson had a better argument and factual basis for challenging this ruling he did not make it during the time of the voir dire and he did not develop it in his brief to the Maine Law Court.

---

[3] This is not the case with Schmidt however. The cited discussion in that case is as follows:

> Schmidt also contends that the court should have excused for cause two jurors who, he asserts, manifested prejudice. We disagree. Juror # 82 indicated that she had read two articles about the case in the local newspaper, and that she knew nine of the witnesses, but also stated that she had no "tight connections" with any of the witnesses; that she was "not friends [with any witnesses], per se," but instead "just know[s] these people"; that she had never discussed the case with any of the witnesses she knew; and that she could be fair and impartial in deciding the case. Further, although Juror # 82 noted that the articles "came across that [Schmidt] had done it" and that they were "kind of worded [to suggest that] a scheme happened," she also explicitly stated that she had not formed any of her own opinions about the matter, had not found the articles persuasive either way, and had only skimmed the articles. Likewise, Juror # 75 was acquainted with sixteen of the forty-two witnesses on the witness list, but stated that she had no prior knowledge of the case, that she would not give any of those sixteen any more credibility than any other witness, that it would not be personally difficult for her to sit in a case in which she knew some of the witnesses, and that she could be fair and impartial in deciding the case. The court was persuaded by the explicit statements of both jurors that they could decide Schmidt's case on a fair and impartial basis, and we do not disturb that decision.

2008 ME 151, ¶ 12, 957 A.2d at 84 -85.

See 28 U.S.C. § 2254(e).  In his § 2254 reply brief Wilson does nothing more than reiterate his argument to the Maine Supreme Court.  (Sec. 2255 Reply Br. at 1-2, Doc. No. 8.)

2 . Wilson's second federal habeas claim is that the trial judge abused his discretion when he ruled that the testimony of Benjamin Quinn was inadmissible. According to Wilson, Quinn could have testified that the victim, Amber Murphy, had falsely accused another man of rape after the victim was rejected by Quinn.  Wilson contends that the accusations of the victim were similar to what Quinn could have testified to. (Sec. 2254 Reply Mem. at 2-4.)  The trial court ruled against the defense on the grounds of the rape-shield law, concluding that the proffered testimony did not fall within the exceptions to that rule.

At the beginning of trial defense counsel explained his argument for allowing the Quinn testimony:

> [T]he defense would propose to call Benjamin Quinn who would testify that on or about July of 2006 he engaged in sexual relationships with Amber Murphy, the alleged victim, on several different occasions, and that after that she repeatedly called him but he refused to return her calls because he was trying to break off the relationship.  Later defense would contend that Amber Murphy told Heather Thurlow, a mutual acquaintance, that Ben, that Mr. Quinn had raped her, but we would also have testimony that Miss Murphy never reported this alleged rape to the authorities.  We argue that this could come in as showing the pattern of conduct here where the young lady has a lover that rejects her and then purports to lie about the type of conduct or the type of sexual relationship claiming it was rape.  That's a pattern we feel fits this case here.

(Trial Tr. at 6, State App. A.)  The prosecutor objected on the grounds that the possibility of Quinn's testimony was a late introduction into the trial tableau and that the rape shield law barred the testimony.  (Id. at 6-7.)  She insisted that this was not being offered on the issue of injury or a theory of an alternative suspect and that this one incident did not create a pattern.  (Id. at 7.)

8

The trial justice stated on the record (reiterating something that he had apparently said previously off the record):

> …I am going to exclude Mr. Quinn and that testimony. I don't believe it falls within the exception to the rape shield law. Additionally, as [the prosecutor] has argued I don't believe that it, the incident, the one incident under the circumstances of this case proves to be a pattern of conduct particularly where there was not a formal allegation of rape. There was simply this alleged statement to a third party who is not in a position of authority, and for these reasons I will exclude it.

(Id. at 7-8.)

With regards to the federal constitutional claim, this is a confrontation clause challenge. Wilson's brief to the Maine Law Court cited to State v. Robinson, 2002 ME 136, 803 A.2d 452 with the parenthetical: "Under the Sixth Amendment to the United States Constitution, a defendant has a right of effective cross-examination and to present a proper defense. See M. R. Evid 412(b)(3)." (Appellant Br. at 12.) Maine Rule of Civil Procedure 412 is the rule on "Past Sexual Behavior of the Victim" and subsection (b)(3) is an exception to the 'shield' when the exclusion of the evidence would violate the constitutional rights of the defendant. Me. R. Evid. 412(b)(3).

As set forth above, the Maine Law Court also cited State v. Robinson in its denial of Wilson's appeal of this and his third § 2254 ground. In Robinson the Law Court summarized:

> The Confrontation Clause of the Sixth Amendment establishes a defendant's right to conduct "reasonable" or "'otherwise appropriate'" cross-examination to expose facts from which jurors could appropriately draw inferences relating to a witness's reliability. Olden v. Kentucky, 488 U.S. 227, 231 (1988) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986)). Accordingly, a defendant has a constitutional right, subject to the reasonable application of Rule 403, to introduce evidence of a victim witness's past sexual behavior to expose a possible motive to lie. See id. at 230-31. Similarly, we have held that a defendant has a constitutional right to present evidence otherwise barred by Rule 412 to rebut the presumption of a victim's sexual naiveté. [State v.] Jacques, 558 A.2d [706,] 708 [(Me. 1989)]. We also allow the admission of

9

> such evidence when the prosecution has "opened the door" by offering evidence of the victim's chastity, State v. Leonard, 513 A.2d 1352, 1355 (Me.1986), and when a statement by the victim about past sexual conduct is relevant for impeachment, [State v.] Almurshidy, 1999 ME 97, ¶ 25, 732 A.2d [280,] 287; see generally M.R. Evid. 412 advisory committee's notes to 1983 amend., Me. Rptr., 449-458 A.2d LXXI (recognizing that rule does not prohibit evidence when presented for impeachment or when prosecution "opens the door"). Each of these exceptions to the general prohibitions of Rule 412 stem from a defendant's constitutional right to effectively cross-examine and to present a proper defense. See generally Jacques, 558 A.2d at 708 (recognizing "defendant's constitutional right of effective cross-examination and to present a proper defense").

Robinson, 803 A.2d at 457.

As with this court's review of Wilson's first Section 2254 ground, seen through Clements, the state court adjudication of this claim fairly addressed the federal question applying the Olden confrontation clause standard and that determination is entitled to 28 U.S.C. § 2254(d)'s deferential review.  In some ways Olden is strong support for Wilson's challenge to this evidentiary ruling as it found in favor of the defendant on a confrontation clause challenge to the Kentucky court's disallowance of testimony meant to undermine the victim's allegations of rape. 488 U.S. at 229-30, 233.  However, the evidence in question in Olden was not barred by the state rape shield law, see Dolinger v. Hall, 302 F.3d 5, 9-10 (1st Cir. 2002), and Olden reiterated the broad discretion of the trial judge to "impose reasonable limits on defense counsel's inquiry into the potential bias of a prosecution witness, to take account of such factors as 'harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that [would be] repetitive or only marginally relevant.'"  Olden, 488 U.S. at 232 (citing Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)).  In Wilson's case the trial court's assessment of the arguments made by the defense and the prosecutor was measured and cannot be viewed as contrary to or an unreasonable application of Olden.  As the First Circuit explained in Dolinger:

10

> Under section 2254(d)(1), it is immaterial whether we would assess the <u>Olden</u> factors as the Commonwealth courts have done in the instant case had we been directly presented with these issues in a non-habeas context. Of necessity, a balancing test normally occasions an exercise of the trial court's informed discretion. See <u>Domaingue v. MacDonald</u>, 978 F.Supp. 53, 58 (D.Mass.1997) (upholding discretionary exclusion of evidence of incest victim's alleged prior sexual promiscuity, given that trial court otherwise afforded defendant "a reasonable opportunity to question the witness'[s] veracity and motivation," and to present "a reasonably complete picture of the witness's bias") (citing <u>United States v. Laboy-Delgado</u>, 84 F.3d 22, 28 (1st Cir.1996)). Thus, it is sufficient that we are able to conclude that the Commonwealth courts "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions [ <u>viz.</u>, the <u>Olden</u> factors]," "appl[ied] that principle to the facts of the ... case," and reasonably balanced the competing factors. <u>Williams</u>, 529 U.S. at 412-13.

302 F.3d at 12. <u>See</u> <u>also</u> <u>cf.</u> <u>United States v. Pumpkin Seed</u>, 572 F.3d 552, 561 -62 (8th Cir. 2009); <u>Hammer v. Karlen</u>, 342 F.3d 807, 811 -12 (7th Cir. 2003); <u>United States v. McCann</u>, No. 05 C 5692, 2009 WL 367502, 7 -8 (N.D. Ill. Feb 10, 2009). "[T]he limitation here was" not "beyond reason." <u>Olden</u>, 488 U.S. at 232.

      3.      Third, Wilson asserts that the trial judge also abused his discretion in ruling inadmissible the testimony of Heather Thurlow. [4] Wilson explains he thinks Thurlow could have testified that the victim recanted her story and that Thurlow's description of this was admissible under Rule 607 as impeachment testimony. During the state proceeding, Wilson argued that after the victim made formal allegations, Thurlow "would testify that she told a few people that she 'can't tell the truth now because she didn't want to go to jail lying about it in the first place!'" (Sec. 2254 Pet. at 8.) The State contends that this ground was never presented to the Maine Law Court as a federal constitutional claim, noting that Wilson did not even cite a single case in support of this argument in his appellate brief.

---

[4] Wilson does not defend this ground in his reply memorandum.

11

The argument in the brief is as follows:

> Mr. Wilson offered to prove through the testimony of Heather Thurlow that Amber M., in Ms. Thurlow's presence, had admitted to lying about being raped by Mr. Wilson.  The trial justice ruled such testimony was inadmissible because the Judge felt that the statement could only be understood by allowing the hearsay testimony of a third person who was present and had questioned Amber M. about the incident in Ms. Thurlow's presence.  The trial Justice was wrong in his interpretation of the proposed testimony of Ms. Thurlow.  We contend that a proper reading of Ms Thurlow's proposed testimony concerning what she heard Amber M. say demonstrates that only Ms. Thurlow's testimony about what she heard was needed in order to make the impeachment testimony understandable and therefore admissible.  Accordingly, the trial Justice abused his discretion i[n] denying the admissibility of Ms. Thurlow's testimony.

(Appellant Br. at 13.)

As the State points out, trial counsel relied on Maine Rule of Evidence 607 when he made his argument that this testimony should be allowed as a prior inconsistent statement.  (Trial Tr. at 267.)   He summarized:

> Here's my proffer then Heather as she testified, Heather Thurlow was at the party with Alicia Lapaz, and there nearby at the party was Amber Murphy and Kim Nelligan who were having a conversation.  Heather Thurlow I am told would say that what she heard the conversation was that Amber Murphy saying people keep asking me about the Andre situation, and Kate Nelligan reminded that's because nobody believes you, then Amber said, I can't tell them the truth now because I don't want get into trouble for it, and I don't want to go to jail, that's the proffer.

(Id. at 270.)  The prosecutor argued that it was hearsay (id. at 268) and that there was a best evidence problem given the fact that the conversation was between Amber Murphy and Kim Nelligan (id. at 273).

I agree with the Court that this claim was never adequately framed as a federal constitutional claim.  See Baldwin, 541 U.S. at 29; Clements, 485 F.3d at 166-67.

  4. Finally, Wilson's fourth 28 U.S.C. § 2254 claim is that there was insufficient evidence to convict him of gross sexual assault and unlawful sexual touching.[5] With respect to this claim, Wilson states that the evidence in his case was weak. He claims his contact with the victim was consensual. He states that the victim let him into her apartment on the evening in question even though she claimed that she was scared of him and that he had improperly touched her the evening before. He says the victim's description of his rough treatment of her did not hold up, citing the testimony of a doctor and a nurse that there were no signs of any bodily injury. He describes the victim's testimony as "inherently incredible" and insists that there is no trustworthy evidence of compulsion.

  The paragraph of <u>State v. Smen</u> upon which the Maine Law Court relied in denying this ground reads:

>  Smen contends that the evidence does not support his convictions for violation of a protection from abuse order and terrorizing. In reviewing a challenge to the sufficiency of the evidence in a criminal matter, we consider the evidence "in the light most favorable to the State to determine whether the trier of fact rationally could have found beyond a reasonable doubt every element of the offense charged." [State v.] <u>Turner</u>, 2001 ME 44, ¶ 6, 766 A.2d [1025,] 1027 (quotation marks omitted). The fact-finder may draw "all reasonable inferences from the evidence." <u>State v. Michaud</u>, 1998 ME 251, ¶ 11, 724 A.2d 1222, 1228 (quotation marks omitted).

2006 ME 40, ¶ 7, 895 A.2d at 321. The State concedes that this ground was presented to the Maine Law Court as a federal constitutional claim and argues that the Law Court addressed it as such. However, in this instance, the cases relied upon by the Law Court and Wilson in his appellate brief do not cite United States Supreme Court precedents when setting forth the insufficient evidence standard.

---

5  Wilson does not defend this ground in his reply memorandum.

The Maine Law Court has analyzed the Maine standard in view of the Supreme Courts Jackson v. Virginia, 443 U.S. 307 (1979) and In re Winship, 397 U.S. 358 (1970). In State v. Van Sickle the Law Court explained:

> [W[henever sufficiency of the evidence is reviewed, our standard of review must meet the minimal constitutional standard set forth by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307 (1979), namely, "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. This Court has long observed, in fact, a substantially equivalent if not identical standard. See, e. g., State v. Doughty, Me., 399 A.2d 1319, 1326 (1979); State v. Rowe, Me., 238 A.2d 217, 223-24 (1968); State v. Wright, 128 Me. 404, 406, 148 A. 141, 142 (1929). The recent decisions of this Court have applied the precise language of Jackson. E. g., State v. Theriault, Me., 425 A.2d 986, 988 (1981); State v. Perfetto, Me., 424 A.2d 1095, 1097 (1981); State v. Lagasse, Me., 410 A.2d 537, 542 (1980). In practice, this Court has consistently applied the standard of review required by Jackson when motions for an acquittal or a new trial have been made and duly ruled upon. Because that standard is the minimum now mandated under Jackson, it follows that this Court must apply that same standard in reviewing the sufficiency of all the evidence even where defense counsel has not moved for acquittal or for a new trial. Under Jackson, we must review the sufficiency of the evidence regardless of whether defense counsel moved for an acquittal or a new trial provided the issue has been raised "by a proper and adequate designation in the points of appeal" and the record is "sufficient to allow the question to be decided." State v. Morton, Me., 290 A.2d 371, 373 n. 2 (1972).

434 A.2d 31, 34 -35 (Me. 1981).

In a footnote the Court observed, as relevant:

> No due process right is more substantial in the law of crimes than that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof." Jackson v. Virginia, 443 U.S. 307, 316 (1979). See In re Winship, 397 U.S. 358 (1969). Thus, applying the correct standard of review, this Court must reverse if it determines that the totality of the evidence was insufficient for conviction.

Id. at 34 n.4.

After reading the transcript of the one and one-half day trial, I am confident that the state court's sufficiency of the evidence determination survives federal review under Jackson and In re Winship. With respect to such a challenge, as "a general rule,"

> federal courts should be particularly cautious about issuing habeas, on grounds of the objective unreasonableness of a state court's conclusion that the evidence is sufficient, where there has been a verdict of guilt by a jury of a defendant's peers, where the defendant's credibility was evaluated by the jury hearing his testimony, where that verdict has been affirmed on appeal in the state system, and where there is no claim of constitutional error in the conduct of the trial. Even on direct appeal, claims that the evidence was insufficient to support the verdict are "often made, but rarely successful." United States v. Moran, 984 F.2d 1299, 1300 (1st Cir.1993).

Hurtado v. Tucker, 245 F.3d 7, 20 (1st Cir.2001); see generally id. 14 -20; see also Trejo v. Hulick, 380 F.3d 1031, 1032 (7th Cir.2004) ( "[G]iven our deferential standard of review, which requires us to consider not whether the state courts were incorrect but whether they were unreasonable, we cannot allow [the § 2254 petitioner] to peel the onion in this fashion. Always to be borne in mind is that a number of weak proofs can add up to a strong proof. [The petitioner] misses the point in mounting separate attacks against each of the three witnesses without considering that the whole might be greater than the sum of the parts.")(internal citations and quotations omitted).

At the close to the state's case defense counsel moved for judgment of acquittal. (Trial Tr. at 239.) The trial judge ruled:

> Viewing the evidence in the light most favorable to the state as the court is required to do at this time the court agrees that if the jury were to find Miss Murphy's testimony credible, which certainly viewing the evidence again in the light most favorable to the state the court could conclude the jury would be able to do so. That alone would get the state over the burden at this stage of the proceedings, but again the other evidence, confirmatory evidence that has been admitted to date would also assist in the effort, so the court will deny the … defendant's motion.

(Id. at 240.) Although the transcript of the testimony presented by the State does reveal some weaknesses in the victim's testimony, the trial court's conclusion is certainly warranted. With respect to the defense's case the next day, I do not find that Wilson's evidentiary presentation so tipped the scales in his favor so that this court might upset the jury's verdict under Jackson and In re Winship. For instance, Wilson's description on direct examination of the events of that night and his interactions with the victim, although potentially creditable, is not on the face of the transcript compellingly convincing. (See Trial Tr. at 304- 09.) There was also an evidentiary hurdle for the defense to overcome apropos Wilson's initial denial of any sexual contact with the victim to the investigating authorities and his eventual rendition of the interaction as being consensual sex (see, e.g., id. at 319-21, 325- 26) (for which the victim offered to pay him three thousand dollars) (id. at 306). Both sides fairly and comprehensively summed up the testimony and evidence that was presented at trial in support of their respective cases, (id. at 330 – 45, 358-61; id. 245-58) and reviewing those narratives does not lead to a conclusion that the defense had a demonstratively stronger case than the State. And this does not even take into account the credibility factor that only the jury could make and which they obviously made in favor of the victim and her version of the sexual contact as being unwanted. "[A]fter viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. Wilson's jury did. I would conclude that this ground has no federal tenability even if the state court adjudication was not accorded the § 2254(d) deference.

*Conclusion*

For the reasons stated above, I recommend that the Court deny Wilson 28 U.S.C. § 2254 relief. I further recommend that a certificate of appealability should not issue in the event Wilson files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

March 17, 2010.